UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JAMES WESTBROOK, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:16-CV-1802-B |
| | § | |
| DALLAS COUNTY, TEXAS, et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Second Motion for Judgment on the Pleadings. Doc. 70. For the reasons below, the Court **GRANTS** Defendants' motion and **DISMISSES** this case with prejudice.

### I.

### BACKGROUND[1]

This civil-rights case arises from Plaintiff James Westbrook's termination. In August 2003, Dallas County hired Westbrook as a deputy. Doc. 50, Pl.'s Second Am. Compl. ¶ 7. On April 9, 2015, Westbrook and several other deputies forcefully entered a home pursuant to a felony-arrest warrant. *Id.* ¶ 8. Once inside, the deputies searched for the suspect. *Id.* ¶ 9. To that end, Deputy Prda climbed up into the attic, causing debris from the attic to fall into the hallway below. *Id.* ¶ 10. Westbrook and the other deputies saw the mess and told Deputy Prda to use the nearby vacuum to clean it up. *Id.* Westbrook witnessed Deputy Prda clean the hallway until it was free from debris. *Id.* ¶

---

[1] The Court draws the facts from Westbrook's Second Amended Complaint and they are taken as true. Doc. 50.

10. The search proved unsuccessful, so the deputies stepped outside to rethink their approach. *Id.* ¶ 11. Armed with a new search strategy, Westbrook and a few other deputies reentered the home "just a few minutes" later to look for the suspect again. *Id.* During this search, Westbrook found himself in the same hallway Deputy Prda had cleaned minutes earlier. *Id.* But this time, the hallway was not bare—Westbrook saw two bags of what he thought was cocaine. *Id.* Westbrook had not seen the cocaine before, and the other deputies at the home said they had not either. *Id.* ¶ 13. Westbrook told Deputy Rodriguez about the cocaine and that it had not been in the hallway during their first search. *Id.* ¶ 12. Deputy Rodriguez, "who was in charge," ordered him to file a report. *Id.* Sargeant Applewhite, Deputy Rodriguez's boss, arrived at the home and spoke with Deputy Rodriguez about the cocaine. *Id.* ¶ 15. Sargeant Applewhite then told Westbrook to file a Criminal Investigative Division/Special Investigative Division (CID/SID) criminal report, which Westbrook alleges would be the appropriate report for property belonging to the homeowner. *Id.* ¶ 15. But Westbrook refused to file a CID/SID report because he believed the cocaine did not belong to the homeowner but to another deputy who dropped the cocaine in the hallway during the few minutes between the two searches. *Id.* ¶ 16. Westbrook instead offered to file a "found property report," which he alleges would be the appropriate report if the cocaine belonged to someone other than the homeowner. *Id.*

The deputies who had been at the home met later that day at the station for debriefing. *Id.* ¶ 17. During the meeting, Westbrook said that he suspected a deputy had planted the cocaine in the hallway. *Id.* Sargeant Applewhite, apparently referencing Westbrook's refusal to write the CID/SID report, said, "If I tell you to do something it is not your place to ask me any questions. You do what I say and that's it." *Id.* Sargeant Appplewhite left the meeting and started an internal investigation to determine whether Westbrook should be punished for insubordination and conduct unbecoming

of an officer. *Id.* ¶ 18. After the investigation was complete, the internal investigation division confirmed the charges. *Id.* ¶ 19. Westbrook then met with Chief Flores and explained why he refused to file the CID/SID report. *Id.* ¶ 20. Chief Flores fired Westbrook after their meeting. *Id.* The Sheriff's Civil Service Commission (Commission) upheld his termination. *Id.* ¶ 24.

Following the Commission's decision, Westbrook filed this civil-rights suit pursuant to 28 U.S.C. § 1983 against Dallas County, Chief Flores, and the Commission. *Id.* ¶¶ 27–32. He claims that Defendants violated the First Amendment by firing him in retaliation for accusing a deputy of planting cocaine in the hallway. *Id.* Defendants argue in their Motion for Judgment on the Pleadings that Westbrook's speech is not protected because he was speaking as a deputy, not as a citizen. Doc. 70, Mot. for J. on Pleadings., 9–12. Defendants' motion has been fully briefed, so it is ripe for the Court's review.

## II.

## LEGAL STANDARDS

A Rule 12(c) motion for judgment on the pleadings "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co. v. Touchstone Props., Ltd.,* 914 F.2d 74, 76 (5th Cir. 1990). The standard for evaluating a Rule 12(c) motion is the same as the standard for evaluating a Rule 12(b)(6) motion for failure to state a claim. *Doe v. MySpace, Inc.,* 528 F.3d 413, 418 (5th Cir. 2008).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) authorizes the Court to dismiss a plaintiff's complaint for failure to state a claim upon which relief

can be granted. In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).

In order to survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

## III.

## ANALYSIS

Defendants assert in their motion that the Court should dismiss Westbrook's complaint because he has not adequately pleaded a First-Amendment retaliation claim. Doc. 70, Mot. for J. on Pleadings., 9–12. Specifically, Defendants argue that the First Amendment does not protect Westbrook's speech because he was speaking as a public employee, not as a citizen. *Id.* Westbrook contends in his response that he was speaking as a citizen because speaking out against public corruption was not one of his duties as a deputy. Doc. 73, Resp., 8–9.

"Speech by citizens on matters of public concern lies at the heart of the First Amendment, which 'was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'" *Lane v. Franks*, 134 S. Ct. 2369, 2377 (2014) (quoting *Roth*

*v. United States*, 354 U.S. 476, 484 (1957)). Although public employees must accept some First Amendment limitations, "a citizen who works for the government is nonetheless a citizen." *Garcetti v. Ceballos*, 547 U.S. 410, 419 (2006).

The Fifth Circuit uses "a four-prong test to determine whether the speech of public employees is entitled to constitutional protection. A plaintiff must establish that: (1) he suffered an adverse employment decision; (2) his speech involved a matter of public concern; (3) his interest in speaking outweighed the governmental defendant's interest in promoting efficiency; and (4) the protected speech motivated the defendant's conduct." *Howell v. Town of Ball*, 827 F.3d 515, 522 (5th Cir. 2016). But at issue here is a preliminary matter: "whether [Westbrook] was speaking as a citizen disassociated with his public duties, or whether [he] was speaking in furtherance of the duties of his . . . public employment." *Id.* at 522–23. For "[o]nly speech made in one's capacity as a citizen is entitled to First Amendment protection." *Id.* at 523. "To resolve whether speech is that of a citizen or an employee, courts determine 'whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties.'" *Malin v. Orleans Par. Commc'ns Dist.*, No. 17-30490, 2018 WL 921584, at *4 (5th Cir. Feb. 15, 2018) (quoting *Lane*, 134 S. Ct. at 2379). "'The Supreme Court has declined to articulate a comprehensive framework for determining whether and when a public employee is speaking as a citizen,' leaving the lower courts to conduct a fact-intensive 'practical' analysis." *Rodriguez v. City of Corpus Christi*, 687 F. App'x 386, 389 (5th Cir. Apr. 25, 2017) (quoting *Hardesty v. Cochran*, 621 F. App'x. 771, 776 (5th Cir. 2015)). But courts within this circuit have considered instructive these non-exhaustive and non-dispositive factors: "(1) the [public employee's] job description; (2) whether [the public employee] learned of the matter on which he spoke in the course of his employment; (3) whether he identified as an

employee in making his report; and (4) whether his report was submitted up the chain of his command." *Valadez v. City of Corpus Christi*, No. 2:16-CV-164, 2017 WL 680677, at *4 (S.D. Tex. Feb. 21, 2017).

The Court agrees with Defendants—from the face of the pleadings, it appears that Westbrook was speaking as an employee rather than a citizen when he said that a deputy planted the cocaine in the hallway. It is undisputed that Westbrook accused a deputy while he was working, based on what he learned at work, and most importantly, to explain to his superior why he would not perform one of his duties: writing a CID/SID report. And Westbrook voiced his concern directly up the "chain of command" at his work—he told Deputy Rodriguez (his boss), then Sargeant Applewhite (Deputy Rodriguez's boss), and finally Chief Flores. Doc. 50, Pl.'s Second Am. Compl. ¶¶ 12, 15–17, 20. The investigation concerning his conduct was internal, and he appealed his termination to the Commission. *Id.* ¶18–19, 21. And Westbrook does not allege that he ever communicated his suspicion to anyone outside of the police department. Although the chain-of-command factor is not dispositive, *Williams v. Dall. Indep. Sch. Dist.*, 480 F.3d 689, 694 n.1 (5th Cir. 2007), Westbrook has not identified any case, and the Court has not found one, where a court in this circuit has held that a public employee spoke as a citizen when he relayed his speech up the chain of command. In other words, "the caselaw is unanimous in holding that [an] employee's communications that relate to his own job function [and go] up the chain of command, at least within his own department or division, fall within his official duties and are not entitled to First[-]Amendment protection." *Davis v. McKinney*, 518 F.3d 304, 313 n.1 (5th Cir. 2008); *see, e.g.*, *Rodriguez*, 687 F. App'x at 390 ("Rodriguez's raising of concerns about an incident that she witnessed

at work with her employer's human resources department, rather than to the public, represents a chain-of-command complaint that is ordinarily within the scope of every public employee's duty.").

Westbrook contends that speaking out against public corruption was not one of his official duties as a deputy, which means he was speaking as a citizen when he accused a deputy of planting the cocaine in the hallway. Doc. 73, Resp., 8. But even if the Court were persuaded by his argument, the job-description factor is not dispositive. *See Valadez*, 2017 WL 680677, at *4. ("Even setting aside what his job description stated, the other three factors are convincing."). The other factors sufficiently convince the Court that Westbrook was speaking as a public employee rather than a citizen. And while allegations of public corruption are certainly a matter of public concern, *Garcetti*, 547 U.S. at 425, public employees do not speak as citizens "whenever public corruption is involved," *Gibson v. Kilpatrick*, 773 F.3d 661, 669 (5th Cir. 2014). So Westbrook has not stated a plausible First-Amendment retaliation claim. *Iqbal*, 556 U.S. at 678.

## IV.

## CONCLUSION

For the reasons stated herein, the Court **GRANTS** Defendants' Second Motion for Judgment on the Pleadings, Doc. 70, and **DISMISSES** Westbrook's Second Amended Complaint, Doc. 50.

**SO ORDERED.**

**SIGNED: March 15, 2018.**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE